1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10  HEIDI ANN CABLE,

11          Plaintiff,                    No. CIV S-06-0515 DAD

12      v.

13  MICHAEL J. ASTRUE,              ORDER
    Commissioner of Social Security,[1]

14

15          Defendant.
    _____/

16          This social security action was submitted to the court, without oral argument, for

17  ruling on plaintiff's motion for summary judgment or remand, and defendant's cross-motion for

18  summary judgment.  For the reasons explained below, plaintiff's motion is granted, the decision

19  of the Commissioner of Social Security (Commissioner) is reversed, and the matter is remanded

20  for further proceedings consistent with this order.

21                          **PROCEDURAL BACKGROUND**

22          On July 31, 2003, plaintiff Heidi Ann Cable applied for Disability Insurance

23  Benefits and Supplemental Security Income (SSI) benefits under Titles II and XVI, respectively,

24  _____

25          [1]  On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security.
    Mr. Astrue is substituted as defendant in this suit pursuant to 42 U.S.C. § 405(g) and Fed. R. Civ.
26  P. 25(d)(1).

                                        1

of the Social Security Act (Act).  (Transcript (Tr.) at 57-59, 518-20.)  The Commissioner denied

plaintiff's application on October 9, 2003.  (Tr. at 40, 521.)  Plaintiff's request for

reconsideration was denied on March 5, 2004.  (Tr. at 41, 48, 522.)  Pursuant to plaintiff's

request dated March 19, 2004, a hearing was held before an administrative law judge (ALJ) on

November 10, 2004, at which time plaintiff was represented by counsel.  (Tr. at 55, 532-50.)  In a

decision issued on December 21, 2004, ALJ Antonio Acevedo-Torres determined that plaintiff

was not disabled.  (Tr. at 16-28.)  The ALJ entered the following findings:

> 1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.
>
> 2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> 3. The claimant's has [sic] mechanical back strain, possible lumbosacral plexus injury, headaches, dysthymic disorder versus depression NOS, personality disorder NOS, and status post uncomplicated thoracotomy for benign esophageal duplication cyst are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(b).
>
> 4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
>
> 5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.
>
> 6. The claimant has the following residual functional capacity: light work, i.e., sit, stand, and walk six out of eight hours, and lift/carry 20 pounds occasionally and ten pounds frequently.  She is able to do simple, repetitive tasks with limited contact with the public consistent with a limitation to unskilled work.
>
> 7. The claimant is unable to perform any of her past relevant work (20 CFR §§ 404.1565 and 416.965).

/////

8.     The claimant is a "younger individual between the ages of 18 and 44" (20 CFR §§ 404.1563 and 416.963).

9.     The claimant has a "high school (or high school equivalent) education" (20 CFR §§ 404.1564 and 416.964).

10.    The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR §§ 404.1568 and 416.968).

11.    The claimant has the residual functional capacity to perform substantially all of the full range of light work (20 CFR §§ 404.1567 and 416.967).

12.    Based on an exertional capacity for light work, and the claimant's age, education, and work experience, Medical-Vocational Rules 202.20 and 202.21, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."

13.    The claimant's capacity for light work is substantially intact and has not been compromised by any nonexertional limitations.  Accordingly, using the above-cited rule(s) as a framework for decision-making, the claimant is not disabled.

14.    The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).

(Tr. at 27-28.)

        On February 9, 2005, plaintiff requested review of the ALJ's decision.  (Tr. at 15.) The Appeals Council denied the request on January 26, 2006.  (Tr. at 10-12.)  Plaintiff then sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on March 10, 2006.  On March 22, 2006, the Appeals Council set aside its earlier action in order to consider additional information but again denied review.  (Tr. at 6-9.)

                                    **LEGAL STANDARD**

        The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence and the proper legal standards were

1  applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000);

2  Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).  The findings of

3  the Commissioner as to any fact, if supported by substantial evidence, are conclusive.  See Miller

4  v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is such relevant evidence as

5  a reasonable mind might accept as adequate to support a conclusion.  Morgan, 169 F.3d at 599;

6  Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389,

7  401 (1971)).

8          A reviewing court must consider the record as a whole, weighing both the

9  evidence that supports and the evidence that detracts from the ALJ's conclusion.  See Jones, 760

10  F.2d at 995.  The court may not affirm the ALJ's decision simply by isolating a specific quantum

11  of supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

12  substantial evidence supports the administrative findings, or if there is conflicting evidence

13  supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see

14  Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

15  improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d

16  1335, 1338 (9th Cir. 1988).

17          In determining whether or not a claimant is disabled, the ALJ should apply the

18  five-step sequential evaluation process established under the Social Security regulations.  Title 20

19  of the Code of Federal Regulations, Section 404.1520, sets forth the test used to assess disability.

20  See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  This five-step process can be summarized

21  as follows:

22          Step one: Is the claimant engaging in substantial gainful activity?
           If so, the claimant is found not disabled.  If not, proceed to step
23         two.

24          Step two: Does the claimant have a "severe" impairment?  If so,
           proceed to step three.  If not, then a finding of not disabled is
25         appropriate.

26  /////

1    Step three: Does the claimant's impairment or combination of
     impairments meet or equal an impairment listed in 20 C.F.R., Pt.
2    404, Subpt. P, App. 1?  If so, the claimant is conclusively
     presumed disabled.  If not, proceed to step four.
3
     Step four: Is the claimant capable of performing his past work?  If
4    so, the claimant is not disabled.  If not, proceed to step five.

5    Step five: Does the claimant have the residual functional capacity
     to perform any other work?  If so, the claimant is not disabled.  If
6    not, the claimant is disabled.

7  Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

8         The claimant bears the burden of proof in the first four steps of the sequential

9  evaluation process.  Yuckert, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the

10 sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098

11 (9th Cir. 1999).

12                                    **APPLICATION**

13        Plaintiff advances four arguments in her motion for summary judgment.  First, she

14 asserts that, because she has significant nonexertional impairments, the ALJ erred by failing to

15 obtain the testimony of a vocational expert.  Second, plaintiff challenges the ALJ's analysis of

16 her mental impairments and contends that the ALJ's findings regarding the severity of those

17 impairments are not supported by substantial evidence.  Third, plaintiff argues that the ALJ failed

18 to follow the directives of the applicable Social Security Ruling in evaluating her diagnosis of

19 fibromyalgia, improperly rejected the diagnosis of fibromyalgia made by plaintiff's treating

20 physician and others, improperly found her fibromyalgia to be non-severe at step two of the

21 sequential evaluation process, and improperly evaluated and rejected the treating physician's

22 opinion concerning the limitations on plaintiff's residual functional capacity as a result of the

23 fibromyalgia.  Fourth, she maintains that the ALJ improperly discredited her testimony and that

24 of her mother, who testified as a lay witness.  The court finds plaintiff's third argument

25 persuasive and addresses that argument below.

26 /////

1            It is well established that at step two of the sequential evaluation process the ALJ

2  must determine if the claimant has a medically severe impairment or combination of

3  impairments.  Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citing Yuckert, 482 U.S.

4  at 140-41).  A medically determinable impairment or combination of impairments is considered

5  severe if it significantly limits an individual's physical or mental ability to do basic work

6  activities.  20 C.F.R.§§ 404.1520(c) and 416.920(c).  The purpose of step two of the sequential

7  evaluation is merely to identify claimants whose medical impairment is so slight that it is

8  unlikely they would be disabled even if age, education, and experience were taken into account.

9  Yuckert, 482 U.S. at 153.  "An impairment or combination of impairments can be found 'not

10  severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal

11  effect on an individual's ability to work.'"  Smolen, 80 F.3d at 1290 (citations omitted).  See also

12  20 C.F.R. §§ 404.1521(a) and 416.921(a).

13            Here, plaintiff alleged disability due to thoracic surgery, headaches, back pain,

14  fibromyalgia, chronic fatigue, panic attacks, anxiety, and endometriosis.  (Tr. at 20.)  The ALJ

15  found that plaintiff suffered from the severe impairments of mechanical back strain, possible

16  lumbosacral plexus injury, headaches, dysthymic disorder versus depression NOS, personality

17  disorder NOS, and status post uncomplicated thoracotomy for benign esophageal duplication

18  cyst, but he rejected plaintiff's claim of fibromyalgia as a severe impairment.  (Tr. at 23, 27.)

19            The Ninth Circuit "has recognized fibromyalgia as a physical rather than a mental

20  disease."  Jordan v. Northrop Grumman Corp. Welfare Benefit Plan, 370 F.3d 869, 873 (9th Cir.

21  2004) (citing Lang v. Long-Term Disability Plan of Sponsor Applied Remote Tech., Inc., 125

22  F.3d 794, 796, 799 (9th Cir. 1997)).  "Common symptoms . . . include chronic pain throughout

23  the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can

24  exacerbate the cycle of pain and fatigue associated with this disease."  Benecke v. Barnhart, 379

25  F.3d 587, 589-90 (9th Cir. 2004).  As the court has explained,

26  /////

1
2
3
4

> [f]ibromyalgia's cause is unknown, there is no cure, and it is poorly-understood within much of the medical community. The disease is diagnosed entirely on the basis of patients' reports of pain and other symptoms. The American College of Rheumatology issued a set of agreed-upon diagnostic criteria in 1990, but to date there are no laboratory tests to confirm the diagnosis.

5  Id. at 590 (citing Jordan, 370 F.3d at 872, and Brosnahan v. Barnhart, 336 F.3d 671, 672 n.1 (8th

6  Cir. 2003)).

7          The ALJ's decision reflects plaintiff's testimony that she has fibromyalgia, takes

8  medication for pain, sleeps only two to three hours per night, has to stay in a dark room when her

9  pain is really bad, is able to walk, stand, or sit for only 15 to 20 minutes, cannot lift any weight,

10  lies down most of the time, and no longer does any household chores. (Tr. at 20.) The ALJ's

11  summary of the medical evidence reflects that plaintiff began to experience such fibromyalgia

12  symptoms as constant pain and constant fatigue at the age of 18; in April 2002 she reported pain

13  all over her body from her left eyebrow to her right ankle; a pulmonologist who evaluated her

14  complaint of chest pain thought it was musculoskeletal; she complained of left upper quadrant

15  pain with a negative CT scan of the abdomen; she complained of shortness of breath with a

16  negative EKG; a rheumatoid factor test was negative; in October 2002, fibromyalgia by history

17  was noted when plaintiff complained of flank pain with a negative renal sonogram and

18  complained of headaches with a negative CT scan; a knee x-ray in December 2002 was negative;

19  in January 2003, plaintiff presented numerous complaints of generalized fatigue and malaise as

20  well as multiple aches and pains throughout her body; in April 2003, she reported left-sided chest

21  discomfort and shoulder pain; she experienced atypical shoulder and upper back pain starting one

22  week after her thoracotomy; in May 2003, she complained of back pain radiating down into her

23  left lower extremity, pain in her upper back and left shoulder, and arm pain; Dr. Phelan found a

24  decreased range of spine motion due to stiffness and discomfort; plaintiff complained of pain in

25  her joints and low back pain; in June 2003, she received chiropractic treatment based on reports

26  of low back pain and leg weakness with pain on palpation of lumbosacral region; Dr. McCrory

1    diagnosed fibromyalgia; in July 2003, plaintiff complained of fitful sleep due to back pain; in

2    November 2003 she reported weekly headaches, and fibromyalgia by history was noted; a brain

3    MRI was negative; she reported pain in her pelvis/hip area; an x-ray was negative; in December

4    2003, Dr. McCrory stated that plaintiff has general spinal pain to include diffuse muscle pain

5    related to fibromyalgia; in February 2004, plaintiff complained of pain in her left hip; an x-ray

6    showed no abnormalities; in March 2004, she was in a pain management program and it was

7    noted that she had fibromyalgia; in August 2004, spasm and tenderness were noted at multiple

8    spinal levels; in October 2004, Dr. McCrory noted chronic pain and found plaintiff limited to

9    four to five hours of activity per day due to spinal spasms, headaches, anxiety, and constant pain

10    at 4 on a scale of 10, increasing with exertion to 7 on a scale of 10.  (Tr. at 21-23.)

11          After listing the evidence described above, the ALJ noted that "[t]he state agency

12    physician opined the [plaintiff] is able to sit, stand and walk six out of eight hours, and can do

13    occasional postural activities," "her headaches and fatigue do not seem to be extreme," and "a

14    light residual functional capacity would take into account both these symptoms."  (Tr. at 23

15    (citing Ex. 6F).)  The opinion characterized by the ALJ as "the state agency physician's opinion"

16    is in fact the older of two residual functional capacity form assessments completed by state

17    agency physicians and included in the record as Exhibit 6F.  The form assessment cited by the

18    ALJ was completed by David Pong, M.D., on September 24, 2003.  (Tr. at 347-54.)  Dr. Pong

19    did not treat or examine plaintiff and obviously did not have the benefit of subsequent medical

20    records, including Dr. McCrory's October 2004 assessment of plaintiff's residual functional

21    capacity.  Even without the benefit of subsequent medical history, Dr. Pong diagnosed back pain

22    and fibromyalgia/fatigue.  (Tr. at 347.)  He concluded that plaintiff's headaches and fatigue are

23    attributable to a medically determinable impairment but that the severity of her symptoms is

24    disproportionate to the expected severity or duration of the impairment.  (Tr. at 352.)

25          The second residual functional capacity assessment form completed by a state

26    agency physician is dated January 15, 2004, and is signed by Antoine Dipsia, M.D.  (Tr. at 333-

43.)  Dr. Dipsia also concluded that plaintiff's symptoms are attributable to a medically

determinable impairment and found that the severity of her symptoms were disproportionate to

the expected severity or duration of the impairment.  (Tr. at 338.)  Dr. Dipsia's conclusions about

plaintiff's exertional limitations are the same as Dr. Pong's except that Dr. Dipsia found no

postural limitations.  (Tr. at 335-36.)

       The ALJ's summary of the medical evidence is followed by (1) his step two

finding that plaintiff's severe impairments consist of "mechanical back strain, possible

lumbosacral plexus injury, headaches, dysthymic order versus depression NOS, personality

disorder NOS, and status post uncomplicated thoracotomy for benign esophageal duplication

cyst" and (2) his step three finding that these impairments are not severe enough, either singly or

in any combination, to meet or medically equal any listed impairment.  (Tr. at 23.)  The findings

at steps two and three do not include any discussion of the other impairments claimed by

plaintiff, and the findings are following by the ALJ's analysis of plaintiff's residual functional

capacity.  (Tr. at 23-24.)

       In discussing plaintiff's residual functional capacity, the ALJ notes his obligation

to consider all symptoms, including pain, and all medical opinions concerning the nature and

severity of the claimant's impairments.  (Tr. at 24.)  In this context, the ALJ comments that

plaintiff "has multiple complaints with minimal findings."  (Id.)  The ALJ includes in this

category plaintiff's allegations regarding pain and her diagnosis of fibromyalgia.  (Id.)  He rejects

the diagnosis of fibromyalgia on the grounds that (1) Dr. McCrory "did not note evidence of

positive trigger points, multiple areas of tenderness or other findings generally indicative of

fibromyalgia"; (2) "no rheumatologist has made a diagnosis of fibromyalgia"; (3) plaintiff "has

had multiple negative tests relating to her complaints of pain"; and (4) Dr. McCrory "noted that

medication controls her pain."  (Id.)  On these grounds, the ALJ gives no weight to Dr.

McCrory's opinion regarding plaintiff's significant limitations and finds that plaintiff has the

residual functional capacity to perform light, unskilled work.  (Id.)  After rejecting all medical

1   evidence supporting a diagnosis of fibromyalgia, the ALJ rejects plaintiff's allegations of severe

2   pain and inability to work as "exaggerated and not consistent with the evidence of record."  (Tr.

3   at 25.)

4          The court finds that the ALJ erred at step two by failing to recognize plaintiff's

5   fibromyalgia as a severe impairment.  As set forth above, it has been recognized by the Ninth

6   Circuit that fibromyalgia is diagnosed entirely on the basis of a patient's subjective reports of

7   pain and other symptoms, and, although there is a generally agreed-upon set of diagnostic

8   criteria, there are no laboratory tests that will confirm the diagnosis.  Benecke, 379 F.3d at 589-

9   90; Jordan, 370 F.3d at 872; Rollins v. Massanari, 261 F.3d 853, 855 (9th Cir. 2001).  The ALJ

10  committed legal error by rejecting the diagnosis of fibromyalgia by plaintiff's treating physician,

11  Dr. McCrory, on the grounds that he had failed to record a specific number of trigger points and

12  the record did not include a confirming diagnosis by a rheumatologist.  The ALJ's reliance on the

13  fact that plaintiff "has had multiple negative tests relating to her complaints of pain" is misplaced

14  because the numerous negative tests serve to rule out other diagnoses that might account for

15  plaintiff's symptoms, not the diagnosis of fibromyalgia.  Finally, the ALJ's conclusion that

16  medication controls plaintiff's pain appears to be based on isolated entries in medical records

17  taken out of context.

18         When plaintiff's subjective reports of pain and other symptoms are credited, as

19  they must be for purposes of a diagnosis of fibromyalgia, the record supports a conclusion that

20  fibromyalgia does in fact limit plaintiff's ability to work.  While the evidence related to

21  plaintiff's fibromyalgia may or may not ultimately lead to a finding of disability, the evidence

22  clearly indicates that the disease has more than a minimal effect on plaintiff's ability to work.

23         Because the medical records reflect that plaintiff's fibromyalgia is more than a

24  slight abnormality, the ALJ erred at step two of the sequential evaluation in not finding plaintiff's

25  /////

26  /////

1    fibromyalgia to be a severe impairment.[2]  In reaching this conclusion the court is particularly

2    mindful that the step-two inquiry is but "a de minimis screening device to dispose of groundless

3    claims." Smolen, 80 F.3d at 1290 (citing Yuckert, 482 U.S. at 153-54).  See also Edlund v.

4    Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001).  Remand is required so that an ALJ can proceed

5    beyond step two of the sequential evaluation process with respect to plaintiff's severe impairment

6    of fibromyalgia.

7                                           **CONCLUSION**

8             In light of the remand required by the ALJ's error at step two, the court finds it

9    unnecessary to address plaintiff's arguments with respect to the ALJ's findings regarding the

10   severity of plaintiff's mental impairments, the ALJ's rejection of the treating physician's opinion

11   regarding the severity of plaintiff's fibromyalgia and its limitations on her residual functional

12   capacity, the ALJ's failure to credit the testimony of plaintiff and her witness, and the ALJ's

13   failure to obtain vocational expert testimony.  See, e.g., Sanchez v. Apfel, 85 F. Supp. 2d 986,

14   993 n.10 (C.D. Cal. 2000) (having concluded that remand is appropriate because the ALJ erred at

15   step two, the court need not consider issues of credibility).

16            On remand, an ALJ will necessarily be required to re-determine plaintiff's

17   residual functional capacity in light of all her impairments and the entire record, and to re-

18   consider whether plaintiff is capable of performing her past relevant work or any other work in

19   the national economy.  Proper weight must be given to the opinions of treating and examining

20   physicians.  See Lester, 81 F.3d at 830; Smolen, 80 F.3d at 1285.  The testimony of plaintiff and

21   her witness must be reevaluated, and if plaintiff's testimony about the severity of her symptoms

22   is rejected, specific, clear and convincing reasons must be given for doing so.  See Light v. Soc.

23   Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997); see also Reddick v. Chater, 157 F.3d 715, 722

24   _____

25        [2] Plaintiff also argues that the ALJ failed to follow the directives of SSR 99-2p in
     evaluating her diagnosis of fibromyalgia.  The court does not find it necessary to address this

26   argument as a separate basis for finding that the ALJ erred with regard to his evaluation of
     plaintiff's diagnosis of fibromyalgia.

                                                 11

1   (9th Cir. 1998).  Any defect with regard to development of the record can also be cured on

2   remand.

3            If the sequential evaluation proceeds to step five, the ALJ may well be required to

4   question a vocational expert in a manner that properly takes into account all limitations on

5   plaintiff's abilities to engage in various work-related functions.  See Holohan v. Massanari, 246

6   F.3d 1195, 1208-09 (9th Cir. 2001) (explaining that testimony from a vocational expert was

7   necessary because the claimant suffered from a severe mental impairment).  On remand, the ALJ

8   must consider whether the grids will "accurately and completely describe the claimant's abilities

9   and limitations," taking into account the nonexertional limitations imposed by plaintiff's

10  fibromyalgia and mental impairments.  Burkhart, 856 F.2d at 1340. See also Reddick, 157 F.3d

11  715, 729 (9th Cir. 1998).[3]

12            Accordingly, IT IS HEREBY ORDERED that:

13            1.  Plaintiff's motion for summary judgment or remand is granted;

14            2.  Defendant's cross-motion for summary judgment is denied; and

15            3.  The decision of the Commissioner of Social Security is reversed, and this case

16  is remanded for rehearing consistent with the analysis set forth herein.  See 42 U.S.C. § 405(g),

17  Sentence Four.

18  DATED: September 27, 2007.

19

20                                      _____

21                                      DALE A. DROZD
                                        UNITED STATES MAGISTRATE JUDGE

22  DAD:kw

23  Ddad1/orders.socsec/cable0515.order

24      [3]  When a claimant's nonexertional limitations are sufficiently severe to significantly limit
    the range of work permitted by exertional limitations, the grids are inapplicable.  See Burkhart v.
25  Bowen, 856 F.2d 1335, 1340 (9th Cir. 1987).  Thus, while the determination in the first instance
    is the ALJ's to make, it appears likely that the testimony of a vocational expert will be required
26  in this case on remand.